UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LEON WILLIAMS, JR.                          CIVIL ACTION NO. 5:14-cv-0117
      LA. DOC #281941

                                     SECTION P

VS.

                                     JUDGE DONALD E. WALTER

WARDEN TIMOTHY KEITH                        MAGISTRATE JUDGE HAYES

REPORT AND RECOMMENDATION
================================

*Pro se* Petitioner Leon Williams, Jr., a prisoner in the custody of Louisiana's Department

of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254

on January 24, 2014.  [doc. # 1].  Petitioner attacks his 2010 conviction for possession of cocaine

and the five-year sentence imposed by the Twenty-Sixth Judicial District Court, Webster Parish.

This matter has been referred to the undersigned for review, report, and recommendation in

accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> On December 12, 2006, Lucille Ferguson, working as a confidential informant ("CI")
> for Lt. Dan Weaver of the Minden Police Department, telephoned the defendant to
> arrange a $100 purchase of crack cocaine. The defendant met Ferguson in the parking
> lot of the Sheppard Heights Apartments. She entered the defendant's car, and he
> showed her his drugs. She then called Weaver to let him know that the defendant was
> in possession of cocaine.[1]
>
> Lt. Weaver testified that:
>
> • he had set up surveillance at the apartment complex;

---

[1] Ferguson, who had worked as a CI on at least 20 prior occasions, testified that she
reported the defendant because she "was tired of seeing it on the streets."

• the defendant turned onto the property without giving a signal;

• he saw several people approach the defendant's vehicle;

• the CI then approached and entered the defendant's vehicle;

• the CI left the car and called him to tell him about seeing the cocaine;

• the defendant apparently saw Weaver and drove off at a fast speed;

• he activated the lights on his unmarked vehicle;

• the defendant exited his car and ran to the apartment building;

• he was in close pursuit, "hollering" for the defendant to stop;

• he arrested the defendant in the backyard of the apartments;

• the defendant had left his car door open; and

• he saw a substance on the door handle of defendant's car which field-tested as cocaine.[2]

*State v. Williams*, 81 So. 3d 220, 222-23 (La. App. 2 Cir. 2011) (footnotes in original).

On December 12, 2006, the State, by bill of information, charged Petitioner with two counts of possession of cocaine. [doc. # 7-1, p. 7]. On September 22, 2010, a jury found Petitioner guilty of one count. *Id.* at 109. On November 8, 2010, the trial judge sentenced Petitioner to five years imprisonment at hard labor. *Id.* at 308.

On August 9, 2011, Petitioner, represented by counsel, appealed to the Second Circuit Court of Appeal and raised two assignments of error: (1) the prosecutor's closing argument deprived Petitioner of his right to a fair trial; and (2) the trial court imposed an unconstitutionally excessive sentence. *Id.* at 431. On September 2, 2011, Petitioner filed a *pro se* brief and argued

---

[2] Subsequent laboratory testing confirmed the analysis.

2

that the trial court improperly denied his motion to suppress.  *Id.* at 451.  The Second Circuit, on

December 14, 2011, affirmed Petitioner's conviction and sentence.  *Id.* at 455.  Petitioner did not

seek further direct review before the Louisiana Supreme Court.

On February 6, 2012, Petitioner filed a *pro se* application for post-conviction relief in the

trial court and raised the following assignments of error: (1) the trial court erred in denying a

motion to continue and a motion for mistrial; (2) the trial court erroneously admitted a

photograph into evidence; (3) insufficient evidence; (4) the trial court erred in denying a motion

to suppress; (5) the trial court erred in denying a motion for directed verdict; (6) erroneous jury

instructions; (7) prosecutorial misconduct during closing argument; (8) prosecutorial misconduct

during opening argument; (9) ineffective assistance of counsel; (10) improper use of perjured

testimony; (11) the State failed to prove its case beyond a reasonable doubt; (12) ineffective

assistance of appellate counsel; (13) Petitioner's former defense attorney withheld exculpatory

evidence; (14) the State withheld exculpatory evidence; and (15) the trial court erred in denying a

post verdict judgment of acquittal.  [doc. # 1-2, p. 28].  The trial court denied Petitioner's

application on April 20, 2012.  [doc. # 9-1].  The Second Circuit Court of Appeal denied

Petitioner's application on March 14, 2013.  [doc. # 1-2, p. 104].  The Louisiana Supreme Court,

on November 8, 2013, likewise denied Petitioner's application.  *Id.* at 138.

Petitioner filed the instant Petition on January 24, 2014, and raised the following

assignments of error: (1) violation of the Confrontation Clause; (2) insufficient evidence; (3)

denial of a motion to suppress; (4) improper closing arguments; (5) the trial court erred when it

denied a motion to continue; and (6) ineffective assistance of trial and appellate counsel.  [doc. #

1].  Petitioner filed an Amended Petition on October 21, 2014, which supplements his ineffective

assistance of counsel claim and raises an additional claim of prosecutorial misconduct.  [doc. #
27].

The matter is now before the Court.

<u>**Law and Analysis**</u>

**I.      Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,
governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.
After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is
limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398
(2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a
conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the
state court decides a case differently than [the Supreme Court] has on a set of materially
indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting
*Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as
opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-
court decision."  *Id.* at 740.  Under the "unreasonable application" clause, a federal *habeas* court

4

may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## II.     Petitioner's Claims

A. Claim One: Confrontation Clause

Relying on the Supreme Court's recent holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), Petitioner argues that the trial court violated his Sixth Amendment right to confront the witnesses against him when it allowed the State to introduce a crime laboratory report without requiring the analyst who produced the report to testify.  [doc. # 1, p. 11].

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to cross-examine the witnesses against him and bars the admission of testimonial hearsay. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).  In *Melendez-Diaz*, the Supreme Court held that certificates of analysis sworn by analysts at a state laboratory, attesting that a substance analyzed was cocaine, were affidavits within the core class of testimonial statements covered by the Confrontation Clause.  *Melendez-Diaz*, 557 U.S. 305; *see also Bullcoming v. New Mexico* 131 S. Ct. 2705 (2011).  Thus, according to the Court, "Absent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial."  *Melendez-Diaz*, 557 U.S. at 311 (internal quotation omitted).

5

Here, the record clearly belies Petitioner's claim.  At trial, the State introduced a crime laboratory report indicating that the tested substance was cocaine.  [doc. # 7-1, p. 249-263].  However, contrary to Petitioner's claim, the analyst who tested the substance did testify at trial.  *Id.* at 251-263.  Petitioner's claim is without merit and should be **DENIED**.

B. Claim Two: Insufficient Evidence

Petitioner claims that the crime laboratory report presented at trial was insufficient to find him guilty of possession of cocaine because the State introduced the report without first calling the analyst who generated the report to testify.  [doc. # 1, p. 13-14].  As stated above, however, the analyst who tested the substance and generated the report did testify at trial.  [doc. # 7-1, p. 251-263].  Thus, the only ground upon which Petitioner claims the evidence was insufficient is patently without merit.  This claim should be **DENIED**.

C. Claim Three: Motion to Suppress

Petitioner claims that the trial court erred when it denied his motion to suppress evidence seized from an allegedly illegal stop and search.  [doc. # 1, p. 15].  In particular, he argues that Officer Weaver could not have reasonably suspected that he was committing a crime because the information that Weaver relied on came from a mentally disabled drug addict.  *Id.* at 16.

Petitioner is not entitled to federal *habeas corpus* relief on this claim.  The Supreme Court held in *Stone v. Powell*, 428 U.S. 465, 482 (1976), that when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  The Fifth Circuit applies this bar to *habeas* review as long as the State afforded the defendant an opportunity to litigate the issue, whether or not the

6

defendant availed himself of the opportunity.  *See ShisInday v. Quarterman*, 511 F.3d 514, 525 (5th Cir. 2007) (*citing Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002); *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980) ("[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone v. Powell*.").  "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits, *Stone* forecloses review."  *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006) (citation and internal quotation marks omitted).

Here, Petitioner does not argue that the Louisiana courts routinely or systematically prevent the actual adjudication of Fourth Amendment claims.[3]  Moreover, the Court notes that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  *Bailey v. Cain*, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007).  Accordingly, Petitioner's Fourth Amendment claim is barred from review and should be **DENIED**.

D. Claim Four: Improper Closing Argument

Petitioner claims that during closing argument, the prosecutor improperly asserted that he had personal knowledge of Petitioner's guilt and improperly vouched for the credibility of two witnesses.  [doc. # 1, p. 17].

_____

[3] In fact, Petitioner adjudicated this Fourth Amendment claim on direct appeal before the Second Circuit Court of Appeal.  *Williams*, 81 So. 3d at 226.  The Second Circuit denied the claim and held, "The stop and the subsequent arrest were entirely lawful."  *Id.* at 227.

Citing, LA. C. CR. P. art. 841, the Second Circuit Court of Appeal determined that Petitioner was precluded from raising this claim because he failed to object to the prosecutor's closing argument at trial. *Williams*, 81 So. 3d at 223-24. Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and is adequate to support that judgment. *See Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or *habeas* review. *Amos v. Scott*, 61 F.3d 333, 388 (5th Cir. 1995).

Procedural default does not bar federal court review of a federal claim raised in a *habeas* petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is "independent" of federal law and rests on a state procedural bar. *Glover*, 128 F.3d at 902. A state court expressly bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Id.* With that in mind, "[i]t is well-settled that [Louisiana's] contemporaneous-objection rule is an independent and adequate state procedural ground." *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002).

Here, the state appellate court issued the last reasoned opinion on this specific issue and, as noted, held that Petitioner did not preserve the issue for appeal because he failed to

contemporaneously object at trial.[4]  *Williams*, 81 So. 3d at 223-24.  To be sure, the appellate court did reach the merits of Petitioner's claim, but only for the sake of argument.  Accordingly, it appears that Petitioner's claim is immune from federal review.

A petitioner, however, may be excepted from the procedural default rule if he can show cause for his default and "prejudice attributed thereto," or if he can demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902.  To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The mere fact that a petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim or objection despite recognizing it, does not constitute cause for a procedural default.  *Id.* at 486.

Here, Petitioner attempts to demonstrate cause for the default by arguing that his trial counsel was ineffective for failing to object to the prosecutor's closing argument.  [doc. # 27, p. 5].  A petitioner can demonstrate cause for a procedural default if he can show that he was represented by counsel whose performance was constitutionally ineffective.  *Murray,* 477 U.S. at 488.  Here, however, for reasons discussed below in Section "F(ii)," Petitioner's trial counsel did not render constitutionally ineffective assistance in choosing not to object.  Thus, counsel's

---

[4] The trial court, on collateral review, found that Petitioner's challenge to the prosecutor's closing argument was procedurally barred because the challenge was already litigated on appeal. [doc. # 9-1, p. 3].  The court undoubtedly relied on LA. CODE. CRIM. PROC. art. 930.4(A), which reads: "Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal . . . shall not be considered."  The procedural bar imposed by Article 903.4(A) "is not a procedural bar in the traditional sense nor is it a decision on the merits." *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5ᵗʰ Cir. 1994).  For this reason, the bar does not preclude review of Petitioner's claim.  The Court simply "look[s]—through" the ruling on collateral review and considers only the direct appeal proceedings.  *Id.* at 1582–83.

performance does not excuse the procedural bar imposed by the Louisiana courts.[5]

Thus, Petitioner's claim is procedurally barred from review absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed.  *Id.* at 497.  To establish a fundamental miscarriage of justice, Petitioner must provide the Court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).  Petitioner must show that "but for constitutional error, no reasonable fact-finder would have found [him] guilty of the underlying offense."  *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Petitioner makes no real argument that a fundamental miscarriage of justice will occur if his claims are not reviewed.  Accordingly, he has failed to overcome the procedural bar to the instant claim.  This claim should be **DENIED**.

E. Claim Five: Motion for Continuance

Petitioner claims that the trial court erred when it denied his motion for continuance. [doc. # 1, p. 18].  On the morning of trial, Petitioner's counsel informed the court that Petitioner's former counsel, Melissa Sugar, had not complied with a subpoena to produce, among other things, documents detailing the layout of the Sheppard Heights Apartment complex and parking lot.  [doc. # 7-1, p. 120].  The trial judge continued the matter until the next day to give Petitioner's counsel time to find the subpoenaed documents.  *Id.* at 126-127.  The next day, Petitioner's counsel informed the court that he located a file index containing a listing of certain

---

[5] Having failed to show an objective cause for his default, the Court does not need to determine whether prejudice exists.  *See Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) ("The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown.").

evidence that Petitioner's former counsel purportedly uncovered. *Id.* at 132. Counsel stated specifically:

> Some of the things [in the listing include] a letter from Dr. Meece and Associates, from M&M Communications. I'm not certain who that is. Other things, including recorded statement given to Cecil Carter, who I believe is a private investigator here in Minden, Webster Parish, information about the vehicle belonging to someone other than Mr. Williams. And I believe this is important information that I think Mr. Williams should be privy to. I think the information is out there. I think it does exist.

*Id.* Counsel then asked the court to continue the matter again until he could locate the documents. *Id.* The trial judge denied the motion:

> [T]his case has been going on for almost three years in and out of court. There have been numerous times that we've had to continue this case. The subpoena was issued, in fact, I believe last spring, if I'm not mistaken.
>
> * * *
>
> The Court did not know about any problems until the jury was being selected, again, on the Monday. Tuesday it was brought back to the Court's attention. The Court granted a continuance and issued a writ of attachment for Ms. Sugar and the file.
>
> * * *
>
> I believe Mr. Woolbert has done everything that he can to get this file. But there is no–there is [no] indication that they may–they said that it may be out there somewhere, but they don't know where it is, is the indication that I've gotten from Mr. Woolbert. So it may be found, it may never be found. And if it's never found then I would never be able to go forward with this jury trial. We've already picked the jury that's coming in at a late time, so therefore I'm going to state that the trial goes forward . . . .

*Id.* at 133-34.

"When a denial of a continuance forms a basis of a petition for a writ of habeas corpus,

11

not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981).  More specifically, in addition to demonstrating an abuse of discretion, a petitioner must show that "there is a reasonable probability that the granting of a continuance would have permitted him to adduce evidence that would have altered the verdict." *Schrader v. Whitley*, 904 F.2d 282, 288 (5th Cir. 1990) (quotation marks and quoted source omitted).

Here, there is no indication of an abuse of discretion and there is no reasonable probability that the outcome of the trial would have been different if the trial court had granted Petitioner's motion.  Petitioner fails to demonstrate that the evidence he sought during the continuance actually existed, that he could have located the evidence, and that the evidence would have altered the trial's outcome.  *See Fitzpatrick v. Procunier*, 750 F.2d 473, 477 (5th Cir. 1985) (denying a *habeas* petition where the petitioner failed to show that he knew where the prospective witness was or that he could locate the witness).  Thus, there is no basis to conclude that the trial judge's decision violated constitutional principles of due process, especially considering the existing, overwhelming evidence of Petitioner's guilt.  This claim should be **DENIED**.

F. Claim Six: Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective for failing to conduct an independent investigation and for, presumably, failing to preserve his prosecutorial misconduct

claim (*See* Section "D" *infra*).[6]  [doc. # 1, p. 20-21].  Petitioner also claims that his appellate

counsel was ineffective.  *Id.* at 21.

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See*

*Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011).

Substandard advice of counsel rises to a constitutional violation only if the substandard conduct

deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some

other constitutional right.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on

a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell

below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced

him.  *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other

prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs

of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162,

172 n.6 (5th Cir. 1997).  Further, "mere conclusory allegations in support of a claim of ineffective

assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d

1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's

actions are encompassed within the wide range of reasonable competence and fall under the

ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The petitioner must show that the

---

[6] This is the Court's interpretation of Petitioner's claim.  Petitioner's argument is somewhat ambiguous: "Counsel Woolbert failed to subject the prosecution's case to meaningful adversarial testing in accordance with state/federal laws that clearly established causing the procedural forfeitures in accordance with La. C.Cr.P. art. 841 in the ability to have said claims herein heard on direct appeal."  [doc. # 1, p. 20].

performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time.  *U.S. v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.* Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 786.  To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and

14

comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

i. Trial Counsel's Failure to Investigate

Petitioner, as noted, first argues that trial counsel rendered ineffective assistance when he failed to conduct "any independent investigation . . . ." [doc. # 1, p. 21].  When assessing the reasonableness of an attorney's investigation, a court must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).  A petitioner must allege with specificity what an investigation would have revealed and how it would have changed the outcome of the trial.  *Miller*, 420 F.3d at 361. "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a *habeas* court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Here, Petitioner does not specify what evidence further investigation would have revealed.  The Court cannot conclude, from Petitioner's unsupported and wholly unexplained claim, that counsel was ineffective for failing to investigate.

ii.  Trial Counsel Failed to Preserve Petitioner's Claim

Next, Petitioner argues that trial counsel, by not objecting, failed to preserve for appeal his claim that the prosecution's closing argument was improper.  [doc. # 1, p. 20].  The trial

court, on collateral review, held that Petitioner failed to show he was prejudiced by counsel's alleged error.  [doc. # 9-1, p. 4-5].  This Court agrees.

On direct appeal, Petitioner argued "that during closing arguments, the prosecutor improperly vouched for the credibility of two state witnesses, and further vouched that he was guilty based on the prosecutor's knowledge." *Williams*, 81 So. 3d at 223.  As mentioned above, the appellate court held that Petitioner, by failing to object, failed to properly preserve the issue for review.  *Id.*  Nevertheless, the court went on to address the merits of the claim:

Williams objects to five statements of the prosecutor.

(1) We said that we were going to call Lucille Ferguson. She was our confidential informant. I've explained to you about her. She's been steady consistent since the first day I ever talked to her that she saw the cocaine in his hand, she got out and called Lieutenant Weaver. Lieutenant Weaver approaches and finds cocaine in the door of the car. As far as why she did this, **I knew her uncle, Jim Lee Stanfield, and they were a family that had a conscience about their community.** And she said she was just tired of seeing this go on. She was tired of being a, being a victim of illegal narcotics and she was tired of seeing it going on in her community. So that's why she helped.

(2) And I really want you to know one thing, I do care what happens in this case, but I care more than that about what happens to Dan Weaver. He chases and fights out there in that street and I know about it because he's constantly in contact with me. He didn't come in here to hurt anybody. He did—he's a professional police officer who keeps our streets and communities—if you're going to do drugs, you better stay out of Minden, Louisiana. You're going to get caught here. And Lieutenant Weaver in a professional, honest, good fashion chased a fleeing criminal, threw him down on the ground, and captured him, went back to the door that was left open when this defendant jumped out of the car and found crack cocaine in the holder of the door where he got out.

(3) You know, we consulted, always consult with officers throughout the—an investigation. And when we become persuaded that we have enough to go to trial, we say stop, don't focus on something else, don't keep chasing this one

16

right here, we've got enough to convict this man. And that's what I told him
to do. I said we have enough to convict, go focus on another defendant.

(4) The police department works closely with our department and when they
get their investigation to a point they hand it to us and we tell them go back
and get some more information or that's enough. So when this investigation
was concluded, the officers checked in with us and we said, **"You've got
enough, you can stop." So it's my case, I concluded that we had enough
evidence to present to you as a jury.**

(5) In cases like this, over and over and over again when a defendant comes
before the bar of justice and he doesn't have anything else to do he always
attacks the policeman, he always attacks the witnesses and he always attacks
the investigation to say it could have been done differently, it could have been
done—I would have done it this way, I would have done it that way or the
other. But I bet you that everybody sitting in this box right here has had
enough life experiences to know that when you're faced with a situation you
face it right up and you do the very best you can with it at that time. I've never
tried a lawsuit that when I looked back on it I say I wish I would have done
this instead of that. So to be critical of what has been done, that's the last
resort of a defendant. They all always do it and most of you I remember said
you didn't watch any crime shows. My wife watches them all and so I learn
a lot from her. But even they—I mean even there I would look at what they
present in a scripted situation and say I'd have done that a little bit different.
**We do the very best that we can and in every case that I prosecute so far
it's been sufficient. Every case I prosecuted so far the defendant always
comes in says the police don't like me, they didn't do it right.**

The prosecutor did make improper and personal references to his relationships with
Lt. Weaver, and with the family of the CI.  Even had objections been made to these
comments, thereby affording the trial court an opportunity to remedy the situation,
these comments are not so egregious that we can find any undue influence on the
outcome of the trial.

*Id.* at 223-224.

Considering the conclusive evidence of Petitioner's guilt, the Court agrees with the

appellate court and the state *habeas* court in that, even assuming the prosecutor's statements were

improper and that counsel did err by failing to object, the error did not affect the outcome of the

trial.  In other words, even if counsel had objected and the judge sustained the objection, and

17

even if counsel had then requested a curative instruction, there is no reasonable probability that the jury would have returned a not guilty verdict.  In addition, it is clear that Petitioner suffered no prejudice on appeal because the appellate court denied the prosecutorial misconduct claim on its merits.  *See Burkett v. Thaler*, 379 Fed. App'x 351, 359-60 (5th Cir. 2010) (Ruling that district courts considering issues like the one at bar should consider whether a petitioner can demonstrate a reasonable probability that the trial *and* appellate proceedings would have differed absent counsel's error).

The state *habeas* court's resolution of this claim was not so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

### iii. Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for failing to raise an ineffective assistance of counsel claim, failing to read the trial transcript, failing to interview trial counsel prior to filing the appellate brief, and failing to raise other unspecified claims.  *Id.* at 21.

An appellate counsel is not required to raise all non-frivolous issues on appeal, even if the defendant requests that the issues be raised.  *See Jones v. Barnes*, 463 U.S. 745, 750-54 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of rigorous and effective advocacy . . . .").  Similarly, counsel does not perform deficiently by failing to pursue an argument that has no validity or hope of success.  *U.S. v. Gaudet*, 81 F.3d 585, 591 (5th Cir. 1996).  When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations

that counsel was deficient for failing to assert other claims.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Here, apart from the ineffective assistance claim, Petitioner fails to identify the "numerous claims" that appellate counsel should have raised.  In that respect, the Court declines Petitioner's ostensible invitation to sift through the record and find the other "significant issues" that appellate counsel should have raised.  It is not the Court's obligation to comb through the record in search of evidence that might support Petitioner's conclusory allegations.

As to the ineffective assistance of counsel claim that appellate counsel allegedly failed to raise, Petitioner fails to explain what appellate counsel should have argued.  Petitioner's claim is unclear: "Counsel Harville failed to raise the herein claims under the assignment of ineffective trial counsel in order to have them addressed on direct appeal regulating defendant to seek relief via post conviction with the burden on me to prove prejudicial/reversible errors."  [doc. # 1, p. 20].  The Court can only surmise, from Petitioner's use of the word "herein," that Petitioner is claiming appellate counsel failed to argue that trial counsel was ineffective for choosing not to object to the prosecution's closing argument.  In that respect, Petitioner fails to demonstrate that there is a reasonable probability that, but for appellate counsel's failure to brief this argument, he would have prevailed on appeal.

To reiterate, when the appellate court reviewed Petitioner's claim that the prosecutor's closing argument was improper, it stated, "Even had objections been made to [the prosecutor's comments], thereby affording the trial court an opportunity to remedy the situation, these comments are not so egregious that we can find any undue influence on the outcome of the trial.  *Williams*, 81 So. 3d at 224.  Thus, even if appellate counsel had squarely raised the ineffective

19

assistance issue, it is clear that the appellate court would have found that trial counsel was not ineffective because the failure to object did not affect the trial's outcome.[7]

Finally, Petitioner claims that appellate counsel failed to interview trial counsel and failed to read the trial transcript.  [doc. # 1, p. 21].  Petitioner raises these claims in conclusory fashion. He fails to allege any specific facts that might illuminate a deficiency in counsel's performance. These conclusory assertions does not warrant relief.  *See Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987) (holding that a *habeas* petitioner has the burden of proving facts in support of his or her claim and unsupported, conclusory allegations do not warrant *habeas* relief).

Accordingly, it is recommended that Petitioner's ineffective assistance of counsel claims be **DENIED**.

G. Claim Seven: Evidence Tampering

In his Amended Petition, Petitioner claims that the prosecutor "fabricated [] evidence to deceive and deprive [him] of a fair trial . . . ."  [doc. # 27, p. 3].  However, the Court cannot consider this claim because Petitioner failed to properly present it to the state courts for review prior to filing the instant Petition.

 "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ."  28 U.S.C. § 2254(b)(1)(A). The Fifth Circuit explained exhaustion as follows:

---

[7] Moreover, as the Court has already determined that this particular ineffective assistance of trial counsel claim is meritless, the Court cannot say that the appellate court would have found merit in the claim.  *See Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984) ("Because the error at the appellate stage stemmed from the error at trial, if there was no prejudice from the trial error, there was no prejudice from the appellate error.").

> The exhaustion requirement is satisfied when the substance of the federal claim is fairly presented to the highest state court on direct appeal or in state post-conviction proceedings, even if the state court fails to address the federal claim, or, if the federal claim is not fairly presented but the state court addresses it *sua sponte*. A claim is fairly presented when the petitioner asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation.[8] It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. Rather, the petitioner must afford the state court a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.

*Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013) (internal quotations marks and citations omitted).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  This means that a petitioner must present his claims to each appropriate state court.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."  *Id.*

Here, it is clear from a review of the state court record that Petitioner did not present this claim to the state courts on direct appeal or on collateral review.  [*See* doc. #s 7-1, p. 431; 1-2, p. 28].  As Petitioner has yet to invoke one complete round of the State's established appellate review process, this claim should be dismissed.

Moreover, if Petitioner were to assert this unexhausted claim before the state courts in a

---

[8] A petitioner does not "fairly present" a claim to a state court if that court must read either a brief before a lower court or a lower court's opinion to locate the claim.  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

second application for post-conviction relief, the state courts would reject the application as procedurally barred in reliance on LA. CODE CRIM. PROC. ANN. art. 930.4(E), which states that a "successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application," or in reliance on Article 930.8(A), which states that "[n]o application for post-conviction relief . . . shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final . . . ."   Nor could Petitioner now seek review of the denial of his ineffective assistance of trial counsel in either the Court of Appeal or the Louisiana Supreme Court.  *See* UNIFORM RULES, COURTS OF APPEAL, Rule 4-3 ("An application not filed in the appellate court within the time so fixed or extended [by the District Court] shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's fault."); SUPREME COURT RULE X, § 5(a) ("An application seeking to review a judgment of the court of appeal . . . after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal.").

Thus, Petitioner's claims are procedurally defaulted and the Court, by extension, is barred from undertaking review.  *See Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) ("Procedural default exists where . . . the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."); *Sones,* 61 F.3d at 416.[9]

---

[9] Petitioner's claims are also considered "technically exhausted" because no state remedies remain available.  *Coleman v. Thompson*, 501 U.S. 722, 731-33 (1991) (holding that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion" because there are no state remedies available to him).  In this scenario, "there is no substantial difference between nonexhaustion and procedural default." *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).

As indicated above, a petitioner may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's  failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover,* 128 F.3d at 902.  Here, Petitioner has not offered any cause for failing to raise this claim in the state court proceedings.  Nor does this Court's review of the record reveal any factor external to the defense that prevented Petitioner from properly raising the claims.

Petitioner's claim is thus procedurally barred from review absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed.  *Hogue*, 131 F.3d at 497.  Petitioner makes no argument in this respect.  Accordingly, Petitioner has failed to overcome the procedural bar to the claim at issue.  This claim should be **DENIED**.

H. Evidentiary Hearing

Petitioner demands an evidentiary hearing in his Amended Petition.  [doc. # 27, p. 7]. Under Rule 8(a) of the Rules governing Section 2254 cases, "the judge must review the answer [and] any transcripts and records of state proceedings . . . to determine whether an evidentiary hearing is warranted."  In making this determination, a federal court must consider whether a hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  "Because the deferential standards prescribed by Section 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  *Id.*  "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary

23

hearing." *Id.*  Here, as the foregoing discussion indicates, the record demonstrates that none of Petitioner's claims have merit.  Accordingly, an evidentiary hearing is not warranted.

<u>Conclusion</u>

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Leon Williams, Jr., [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of

appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

      In Chambers, Monroe, Louisiana, this 19th day of November, 2014.


KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE